a

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

RAYMOND JOHNSON #327504,          CIVIL DOCKET NO. 5:22-CV-06257
Petitioner                                                    SEC P

VERSUS                                    JUDGE S. MAURICE HICKS, JR.

TIM HOOPER,                       MAGISTRATE JUDGE PEREZ-MONTES
Respondent

<u>REPORT AND RECOMMENDATION</u>

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by pro se Petitioner Raymond Johnson ("Johnson"). Johnson is an inmate at the Louisiana State Penitentiary in Angola, Louisiana. Johnson challenges a conviction and sentence imposed in the First Judicial District Court, Caddo Parish.

Because Johnson cannot meet his burden under § 2254, the Petition (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

## I.    <u>Background</u>

Johnson was convicted of second-degree murder "for the stabbing death of his on-again, off-again girlfriend, Yolanda Moore." *State v. Johnson*, 52,762, p. 1 (La.App. 2 Cir. 8/14/19); 277 So.3d 1263, 1269, *writ denied*, 2019-01670 (La. 7/17/20); 298 So.3d 176.

Prior to trial, the State filed multiple notices of its intent to use evidence of other crimes against Johnson. These prior incidents involved domestic abuse against Yolanda Moore ("Moore") and another former girlfriend, as well as violence against a

1

friend of Moore's.  The trial court found most of this evidence to be admissible.  *Id.* at 1270.

Johnson filed a motion to suppress statements made to detectives during custodial interrogation.  Johnson contended that the detectives continued with his interrogation despite his request for a lawyer.  The motion was denied, and the matter proceeded to trial by jury.  *Id.*  Johnson was convicted.  He filed a motion for a post-verdict judgment of acquittal, which the trial court denied.  Johnson was sentenced to the mandatory term of life imprisonment at hard labor.

Johnson appealed.  His attorney argued: (1) the evidence was insufficient to prove that Johnson committed second degree murder, and the trial judge erred in denying the motion for a post-verdict judgment of acquittal; (2) the trial judge erred in allowing the State to introduce evidence of other crimes and acts by Johnson; and (3) the trial judge erred in denying the motion to suppress despite Johnson unequivocally requesting an attorney at the onset of questioning by detectives investigating the homicide.  Johnson also filed a pro se appellate brief asserting that the evidence was insufficient to convict him.  The conviction and sentence were affirmed.  *Johnson*, 277 So.3d 1263 at 1284.

Johnson sought review in the Louisiana Supreme Court, but the writ was denied.  *State v. Johnson*, 2019-01670 (La. 7/17/20); 298 So.3d 176.  He did not seek further review in the United States Supreme Court.

Johnson filed an Application for Post-Conviction Review on July 19, 2021.  ECF No. 1-3 at 138-171.  He asserted the following claims: (1) violation of his Sixth

Amendment right to autonomy by trial counsel during closing arguments; (2) Article I of the Louisiana Constitution and Article 782 of the Code of Criminal Procedure violate his Sixth and Fourteenth Amendment rights under the United States Constitution; (3) jury instruction for a non-unanimous verdict violated his constitutional rights and; (4) ineffective assistance of counsel. The application was denied. ECF No. 1-3 at 173.

Johnson sought review in the Louisiana Second Circuit Court of Appeal. ECF No. 1-3 at 190. The appellate court denied the writ "[o]n the showing made." ECF No. 1-3 at 212. The Louisiana Supreme Court denied writs on November 16, 2022. *State v. Johnson*, 2022-00895, p. 1 (La. 11/16/22); 349 So.3d 995, 996.

The State does not dispute the timeliness of the Petition. ECF No. 14-1 at 11.

## II.    Law and Analysis

### A.    There was sufficient evidence to convict.

Johnson asserts that the evidence is insufficient to support his second-degree murder conviction under the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). He argues that the State failed to prove beyond a reasonable doubt that the homicide was not justified as self-defense. Johnson claims that Moore viciously attacked him while she was in a "drunken and drug-induced rage" and that he reasonably believed he was in imminent danger of death or great bodily harm when he cut and stabbed her 21 times with a knife.

The Louisiana Supreme Court denied Johnson's writ application without comment, so this Court must "look through" to the last reasoned state court decision

3

addressing the sufficiency of the evidence and must presume that the unexplained Louisiana Supreme Court writ denial adopted the same rationale. *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). The last reasoned opinion is that of the Louisiana Second Circuit Court of Appeals, which applied *Jackson* and concluded that the evidence was sufficient "for the jury to find that Johnson stabbed Moore while having the specific intent to kill her or to inflict great bodily harm upon her, and that the homicide was not committed in self-defense or the defense of others." *See Johnson*, 277 So. 3d at 1278.

Since the claim was adjudicated on the merits, it is subject to deferential review under 28 U.S.C. § 2254(d). As a mixed question of law and fact, the Court must determine whether the state courts' adjudication was contrary to or an unreasonable application of *Jackson*. *See* 28 U.S.C. § 2254(d)(1); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008), *cert. denied*, 555 U.S. 995. And this Court's review is doubly deferential, such that the state court determination may not be overturned unless it was an objectively unreasonable application of the deferential *Jackson* standard. *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Harrell v. Cain*, 595 F. App'x 439 (5th Cir. 2015). Thus, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

Under *Jackson*, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at

319.  "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *cert. denied*, 546 U.S. 831 (2005).  It is the "responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. at 2, 132 S. Ct. 2.  Additionally, the Court's review is limited to the evidence presented at trial. *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) *cert. denied*, 559 U.S. 995 (2010).

The federal court must look to the substantive elements of the offense when applying the *Jackson* standard.  *See Norris v. Dretke*, 826 F.3d 821, 833 (5th Cir. 2016), *cert. denied*, 137 S.Ct. 1203 (2017).  For purposes of Johnson's conviction, second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.  *See* La. R.S. 14:30.1(A)(1).  Specific intent is the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La. R.S. 14:10(1).  Under Louisiana law, specific intent may be inferred from the circumstances of the offense and from the defendant's conduct.  *State v. Draughn*, 2005-1825 (La. 01/17/07), 950 So.2d 583, *cert. denied*, 552 U.S. 1012 (2007).

In 2017, Louisiana law provided that a homicide is justifiable as self-defense "by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1).  Because the State has the burden of proving that the defendant did not act in self-defense, the question under *Jackson* is whether a

rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense or the defense of others. *See Seals v. Vannoy*, CV 16-9892, 2017 WL 11710615, at *56 (E.D. La. July 7, 2017), *report and recommendation adopted,* CV 16-9892, 2019 WL 13246629 (E.D. La. May 6, 2019), *aff'd,* 1 F.4th 362 (5th Cir.2021); *Hyman v. Cain*, 2015 WL 3755867, *10 (E. D. La. 2015).  For several reasons, the record establishes that a rational trier of fact could find that Moore was not killed in self-defense.

First, Johnson stabbed Moore 21 times.  The jury heard that Johnson called Moore at 7:29 p.m. on April 28, 2017.  ECF No. 14-8 at 166.  Johnson told Corporal Schulz that Moore had come over and that they were together for a while. Johnson told him they began arguing when he was getting up and getting ready for work. According to Johnson's statement, Moore had been drinking, was intoxicated, and started a fight with him.  She knocked over his furniture and a television.  Johnson further reported that Moore started cutting him and chasing him through the house while he tried to get away from her.  ECF No. 14-8 at 182.  Johnson claimed he grabbed a sheet and ran to a neighbor's house.[1]  He eventually went back home with Moore.  *Id.*

---

[1] Johnson's neighbor, Cassandra Pipkins, testified that after she went to sleep around 2:20 a.m., she was awakened by Johnson banging on her door and saying "Neighbor, neighbor." He was naked and asked for a sheet. She gave him a cream-colored flat sheet and identified the sheet under Moore as the one she gave Johnson. Pipkins did not see anyone on Johnson's porch. ECF No. 14-7 at 75-79.

Johnson later told Detectives Logan McDonald and Adam McEntee that Moore was intoxicated and started fighting him when he was getting ready for work. He said she knocked over his furniture and television and started cutting him while they were running through the house. Johnson told the Detectives that he pushed Moore when she grabbed his testicles and then ran out of the house while grabbing a sheet off the floor. He went to his neighbor's house to ask to use the phone. While he was there, Moore sat on a chair on his porch. The neighbor saw her fall off the chair, so he ran back to his house, picked Moore up and brought her inside. He then called 911 after first calling a friend. ECF No. 14-8 at 171-73. Detective McDonald tried to ascertain from Johnson whether he was defending himself, but Johnson was adamant that he did not injure Moore or know how she sustained her injuries. *Id.* at 178-85.

The testimony and evidence established that Johnson called 911 at 5:45 a.m. on April 29, 2017. ECF No. 14-7 at 42. Johnson's cell phone records showed that he made two calls prior to calling 911. He made a six second call to a "Sir Dar Pete" at 5:33 a.m., and then a call at 5:35 a.m. to "Ronnie" that lasted six minutes and 31 seconds. ECF No. 14-8 at 166-67.

First responders who arrived on scene shortly after the 911 call saw that Moore exhibited no signs of life. It was estimated that Moore had been dead from one to two hours. *Id.* at 29, 74. Corporal Schulz and Corporal Rodney Medlin of the Shreveport Police Department ("SPD") were the first to enter Johnson's home. Both observed blood on the front porch leading to the door and living room area where a couch and a glass-topped table were overturned. Moore's body was located ten to fifteen feet

from the front door, on the floor with a cream-colored sheet under her and with Johnson standing above her. Her head was on a pillow and a fan was blowing at her feet. She was unresponsive, bloody, unclothed from the waist up, and appeared to have multiple stab wounds. She was also cold to the touch. ECF No. 14-7 at 54-57; 58, 67-71.

Corporal Medlin testified that there were indications of a major struggle inside the house, particularly in the living room and a bedroom where Moore's glasses and identification were found. Furniture was overturned, and there was blood on the mattresses, floors, along the hallway, inside a bathroom, and in the kitchen. There was also a hole in the bathroom wall with blood below it. Corporal Medlin located a bloody knife in Johnson's yard just east of the porch steps. *Id.* at 70-72.

Chris Henry ("Henry") of the Shreveport Fire Department ("SFD") also responded to the scene. He testified that electronic equipment in the living room appeared untouched even though the room was "disturbed," and couches overturned. ECF No. 14-8 at 13. When Henry asked Johnson about the victim, Johnson denied knowing her and said that she was a stranger who walked into his house while he was getting ready for work. He claimed that he asked her to leave, but she would not, so he went to his neighbor's house to get help. Johnson further explained to Henry that he saw another person walking down the street who told him that someone was lying on his porch. *Id.* at 15.

When Henry asked Johnson how the person got on the porch, Johnson told him that they had a brief altercation or scuffle and that he thought she was exhausted.

He pulled her inside and put on the fan to cool her off. *Id.* at 15-16.  While treating Johnson's superficial wounds, Johnson told him that the woman's name was Yolanda. Henry saw that Johnson had her name tattooed on his body.  Johnson then admitted that he knew her and that he tried to get her out of his house after their "altercation." *Id.* at 17-18.

Other SFD employees testified that Johnson had superficial lacerations on his arm and one on his forehead, and that his wounds were fresh, meaning the cut skin was still wet.  One SFD employee found it unusual that Johnson was walking around with bleeding wounds, while the victim was deceased and "had been down too long." *Id.* at 48.

Moore's autopsy showed that she had 21 stab wounds, three of which either individually or collectively caused her death. ECF No. 14-8 at 59.  The wounds were caused by a single-edged blade and were consistent with the knife found in Johnson's yard.  *Id.* at 71-72.   Dr. James Traylor testified that Moore's injuries were not consistent with falling on a glass table.  The wounds were defensive and not self-inflicted.  *Id.* at 70-75.  Dr. Traylor estimated that Moore had been dead for one to three hours when SFD arrived on scene.

Toxicology showed Moore had a blood alcohol level of .203. Additionally, Diphenhydramine (Benadryl), marijuana metabolites, and nicotine were present. *Id.* at 73-74.

Reginald Fleming testified that Johnson warned Moore about a month before her murder that her time was short. ECF No, 14-8 at 131.  Denise Taylor testified

9

about other incidents of violence perpetrated by Johnson upon Moore. *Id.* at 135-42. Dana Randle, the mother of three children with Johnson, testified about the violent abuse Johnson inflicted upon her during their relationship. *Id.* at 144-52.

The appellate court found the "evidence overwhelming that Johnson did not kill Moore in self-defense." *Johnson*, 277 So.3d at 1277-79. It noted that, while Moore sustained 21 stab wounds, had defensive injuries on her hands, and her blood was throughout Johnson's house and on his vehicle, Johnson sustained only superficial wounds that were still fresh after Moore had been dead at least an hour. *Id.* He delayed calling 911 and engaged in a six minute call with a friend before doing so. Finally, he made various statements that belied his self-defense claim. *Id.* The Second Circuit rejected Johnson's argument that his actions were necessary to save himself from the danger posed by Moore allegedly attacking him while in an intoxicated state. *Id.*

Johnson fails to show that the state court adjudication of his sufficiency of the evidence claim is objectively unreasonable under *Jackson*. His claim that Moore was intoxicated and out of control is conclusory and unsupported by the record. Likewise, his self-defense claim is contradicted by the evidence of 21 stab wounds to Moore and only minor, fresh injuries to himself. Nothing in the record supports a justification of the homicide as self-defense under Louisiana law. La. R.S. 14:20(A)(1).

Equally unsupported is the contention that Johnson stabbed Moore 21 times to save himself from imminent danger of losing his life or sustaining great bodily

harm.  Rather, the 21 stab wounds establish Johnson's specific intent to kill or inflict great bodily harm upon Moore.

Because the evidence was more than sufficient to prove that Johnson committed second-degree murder, and that his actions were not justified as self-defense, Johnson's *Jackson* claim should be denied.

**B.    Johnson's Fourth Amendment claim is not subject to habeas review.**

Johnson asserts that the trial court violated Louisiana's rules of evidence in allowing evidence of other crimes at trial through witnesses Reginald Fleming, Denise Taylor, and Dana Randle.  A claim of erroneous admission of evidence in violation of state law is not cognizable on federal habeas review.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

To the extent Johnson argues the violation of the Fourth Amendment of the United States Constitution, his claim still fails.  A state court decision denying such a claim could be the basis for federal habeas relief only if the decision was "contrary to" or an "unreasonable application of" clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  Significantly, the United States Supreme Court has never held that the admission of other "other crimes" evidence can serve as the basis for a due process violation.  *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (holding that when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law" (quotation marks and brackets omitted)).  "Absent controlling Supreme Court precedent on the issue [of whether the admission of prior

11

crimes evidence violates due process], the state courts' determination cannot be said to be contrary to, or an unreasonable application of, clearly established federal law." *Wallace v. Deville*, No. 17-407, 2017 WL 2199024, at \*16 (E.D. La. Apr. 26, 2017), *adopted*, 2017 WL 2198957 (E.D. La. May 18, 2017).

Furthermore, Johnson's claim also fails under the normal due process analysis applied to evidentiary claims. With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

*Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted). Under these standards, to establish a fundamentally unfair trial, a petitioner must show a reasonable probability that the verdict would have been different had the trial been properly conducted. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985).

As the Second Circuit noted,

> The trial court did not abuse its discretion in allowing the testimony of Taylor, Fleming, and Randle. The testimony of these three witnesses clearly established a pattern of domestic abuse and, as noted by the *Altenberger* court, the fact that the prior instances [concerning Randle] occurred years before the instant offense is insufficient in and of itself to require exclusion of the evidence. The evidence was properly admissible to show motive and intent. In addition, the probative value of this evidence was not outweighed by an unfair prejudice to Johnson. His long-term pattern of inflicting physical harm or death on his partners is highly probative of his intent to inflict great bodily harm or death on Moore. Finally, even if the trial court erred in allowing any or all of the testimony by Fleming, Randle, or Taylor, it was harmless error. Their testimony aside, the remaining evidence was overwhelming that

Johnson stabbed Taylor [sic] at least 21 times with the intent to kill her
or to inflict great bodily harm and that he did not do so in self-defense.
This assignment of error is without merit." *State v. Johnson*, 277 So.3d
at 1281.

Even without the testimony of Taylor, Fleming, and Randle, there was sufficient
evidence of guilt.  Johnson fails to show that the state court's adjudication of this
claim was contrary to or an unreasonable application of any clearly established
federal law as required by § 2254(d)(1)(A).

C.    **The denial of Johnson's Motion to Suppress and Request for Counsel
does not entitle him to habeas relief.**

Next, Johnson asserts that his right to counsel under the Sixth Amendment
was denied when detectives continued to question him after he uttered: "I guess I
better get a lawyer."  At a hearing on Johnson's motion to suppress, Detective
McDonald testified that he did not hear Johnson's utterance at the time of the
interview.  After listening to the recording in court, Detective McDonald still could
not clearly hear what Johnson was saying because Johnson made the utterance while
the detective was talking.  ECF No. 14-9 at 194-96.

The trial court analyzed whether Johnson invoked the right to counsel under
*Davis v. United States*, 512 U.S. 452 (1994), and concluded he did not.  The judge
noted that the request was "barely audible and said while the questioning officer is
speaking." ECF No. 14-9 at 208.  Addressing the denial of the motion to suppress in
court, the judge stated that she had to listen to the recording 10 times to even hear
what Johnson said.  *Id.*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that once
a person invokes the right to counsel, interrogation must stop until an attorney is

present.  An accused is not to be interrogated further until counsel is provided to him or unless he initiates further communication with the police.  *See Edwards v. Arizona*, 451 U.S. at 484-85.

However, the Supreme Court held in *Davis* that law enforcement officers are not required to cease questioning when a defendant makes an ambiguous or equivocal request for counsel.  The court explained that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning."  *Davis*, 512 U.S. at 459.  Whether an accused has unambiguously invoked his right to counsel is an objective inquiry.  *Id.*  The *Davis* court found that the accused did not invoke the right to counsel by remarking, "Maybe I should talk to a lawyer." *Davis*, 512 U.S. at 462.

Whether an accused invoked the right to counsel presents a mixed question of law and fact.  *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002).  The habeas court must give substantial deference to the state court's findings of fact in deciding such claims.  *Id.*  Habeas relief is available to Johnson only if the state court adjudication of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1)(a).

The Second Circuit analyzed the denial of the motion to suppress under both state law as well as *Soffar* and *Davis*, reasoning:

14

After being advised of his rights, Johnson asked the detectives if he needed a lawyer. Detective McDonald advised Johnson that he could not give him legal advice but told him that he could have an attorney if he wanted one. Johnson freely answered questions thereafter. At 14:53 on the recording, Johnson made the barely audible comment, "I guess I better get a lawyer." On the recording, Detective McDonald is talking at the same time that this comment was made. The trial judge noted in her reasons for ruling that she had to listen to the recording ten times to even discern what Johnson was saying. Detective McDonald testified at the suppression hearing that at no time did he understand Johnson to request an attorney. After hearing the audio recording in court, Detective McDonald commented that he could hear some vague possible reference to a lawyer, but he could not hear exactly what was said.

Johnson failed to show that he invoked his right to counsel in a clear manner such that a reasonable police officer in the circumstances would have understood the statement to be an unequivocal request for an attorney and that custodial interrogation was to be terminated. Accordingly, the trial court did not abuse its discretion in denying Johnson's motion to suppress his statements to Detectives McDonald and McEntee. This assignment of error is without merit."

*Johnson*, 277 So.3d at 1283-84.

Johnson has not established that the state court's adjudication of this claim was contrary to or involved any unreasonable application of *Davis* or any other federal law. Johnson did not unambiguously or unequivocally invoke his right to counsel such that the detectives were required to stop the interview.

### D.   Johnson's right to autonomy was not violated.

Johnson argues that trial counsel conceded his guilt during closing argument by arguing for a responsive verdict of manslaughter if the jury did not find that Johnson acted in self-defense. ECF No. 1-2 at 29-30. Johnson asserts that he never authorized his attorney to deviate from the self-defense claim. Johnson explains that

he did not object at trial because he could face "repercussions and retribution," such as being banned from the remainder of trial. *Id.* at 30.

Johnson's claim is based on *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), which held that defense counsel's conceding of a defendant's guilt over the defendant's "intransigent and unambiguous objection" violates a defendant's Sixth Amendment autonomy to decide the objective of the defense and constitutes a structural error. Over McCoy's objections, his attorney conceded his guilt to a triple homicide but sought leniency during the penalty phase. The *McCoy* opinion notes that the "defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *McCoy*, 138 S.Ct. at 1505.

Unlike *McCoy*, Johnson's attorney did not concede his guilt to second-degree murder. Johnson claims that counsel should have urged the jury to accept the full self-defense argument instead of accepting the charge of manslaughter. Still, by asserting either of these defenses, Johnson admits that he killed the victim. And Johnson's lawyer was allowed to make the decision to argue both self-defense and manslaughter, especially when the jury was instructed on both defenses. *McCoy*, 138 S. Ct. at 1509 ("[Defendant's counsel] could not interfere with [the defendant's] telling the jury 'I was not the murderer,' although counsel could, if consistent with providing effective assistance, focus his own collaboration on urging that [the defendant's] mental state weighed against conviction."); *Parker v. Vannoy*, 17-CV-0465, 2020 WL 1536523, at *2 (W.D. La. Mar. 31, 2020).

16

Johnson has not established that the state court ruling was contrary to or an unreasonable application of *McCoy*.

### E.    The jury instructions did not result in a constitutional violation.

Johnson presents five claims based on the non-unanimous jury instructions given at his trial.  In accordance with the law in effect in September 2018, the trial court instructed the jury that the verdict need not be unanimous and that 10 of 12 jurors must agree on the verdict.  ECF No. 14-9 at 62.  After the jury returned a guilty verdict, defense counsel declined to poll the jury.  *Id.* at 64.

In 2020, the Supreme Court decided *Ramos v. Louisiana,* 138 S.Ct. 1318 (2019), finding that the Constitution requires a unanimous verdict to convict a defendant of a serious offense.  The *Ramos* decision came approximately three months before the Louisiana Supreme Court denied Johnson's writ application on direct appeal.  *See* ECF No. 14-11 at 101; *Ramos*, 140 S.Ct. 1390 (2020).

### 1.    There was no structural defect.

First, Johnson alleges that the non-unanimous jury instruction and the failure to poll the jury violates the Sixth and Fourteenth Amendment rights of Due Process and Equal Protection and is a structural error.  He speculates that the verdict may have been non-unanimous.

Defendants whose convictions by a nonunanimous verdict were pending on appeal and not yet final when *Ramos* was decided were entitled to vacated convictions and further proceedings, such as a retrial or plea bargain.  *See Ramos*, 140 S.Ct. at 1406.  However, nothing in *Ramos* required that a conviction be vacated because the

jury was not polled as to its verdict, particularly where state law did not require polling and where the defense specifically declined to poll the jury. *See* La. C. Cr. P. art. 8124; ECF No. 14-9 at 64.

Because Johnson cannot show that the guilty verdict in his case was non-unanimous, he attempts to analogize the jury instruction in his case to a flawed reasonable doubt instruction, which was found to constitute a structural error by *Sullivan v. Louisiana*, 508 U.S. 275 (1993). However, Johnson fails to identify any clearly established federal law holding that non-unanimous jury instructions or the absence of a jury poll violate the constitution or support a structural error under the *Ramos* decision.

The trial court correctly instructed the jury as to the law in effect at the time of Johnson's trial in September 2018. At that time, article 782 provided that "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." La. C.Cr. P. art 782. And article I, §17(A), of the Louisiana constitution provided the same. By legislative enactment and statewide election, both provisions were amended to provide for unanimous verdicts for offenses committed on or after January 1, 2019.

The unanimity requirement was not in effect at the time of Johnson's trial. As such, the instructions given to the jury regarding the number required to convict was correct under then existing state and federal law. Thus, Johnson fails to establish that the Louisiana Supreme Court's adjudication was contrary to *Ramos* or other clearly established federal law.

18

2.   <u>Racial discrimination.</u>

Johnson next claims that the Louisiana Legislature abridged the Privileges and Immunities Clause of the Fourteenth Amendment by enacting racially discriminatory non-unanimous jury provisions during the Constitutional Conventions in 1898, 1921, and 1974.   Johnson raised this claim on post-conviction review in the district court and the Louisiana Supreme Court, but he did not fairly present the same federal claim in his writ application before the Second Circuit.   In that application, Johnson only claimed that the district court had failed to rule on the merits of the claim.   ECF No. 14-13 at 22-24; 14-12 at 30-32.   Thus, the state did not get a fair opportunity to address his federal constitutional claim.   *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971). Johnson's claim is unexhausted.

It is now too late for Johnson to exhaust this federal claim.   *See* La. C. Cr. P. art. 930.8.   Therefore, the claim is procedurally defaulted.   *Kittelson v. Dretke*, 426 F.3d 306 (5th Cir. 2005); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).   Federal habeas review is barred absent the petitioner demonstrating cause for the default and actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice.   *Finley*, 243 F.3d at 220.

Even if the claim was not barred from review, it is meritless.   The Louisiana Supreme Court denied Johnson's writ upon concluding that he could not satisfy his post-conviction burden of proof under La. C. Cr. P. art. 930.2. Johnson does not show that the state court adjudication was contrary to or involved any unreasonable

19

application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. §2254(d)(1)(A). Johnson cannot prevail under *Ramos* because he does not establish that his verdict was non-unanimous and the jury instructions at his trial were a correct statement of the law at that time.

### 3.    Equal Protection.

Johnson next complains that the non-unanimous jury instruction violated his rights under the Equal Protection Clause of the Fourteenth Amendment. He asserts that La. Const. Art. I, §17(A) and La. C. Cr. P. art. 782, prior to the amendments effective January 1, 2019, were racially motivated laws. Like the prior claim, this claim is unexhausted and procedurally defaulted. Regardless, Johnson fails to show that the denial of the claim by the Louisiana Supreme Court was contrary to or an unreasonable application of federal law. *Ramos* did not adjudicate an equal protection claim.

### 4.    Withdrawal of appeal.

Citing article 930.6 of the Louisiana Code of Criminal Procedure, Johnson asserts that his conviction should be vacated because the state withdrew its appeal in "the Melvin Maxie case." ECF No. 1-2 at 47. Johnson's state law claim is not subject to federal habeas review. *See* 28 U.S.C. §2254(a).

### F.    Johnson did not receive ineffective assistance of counsel.

Johnson claims that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment, the Fourteenth Amendment, and *Strickland v. Washington*, 466 U.S. 668 (1984) due to his attorney's: (a) failure call witnesses; (b)

failure to investigate prior incidents; (c) failure to consult or hire an expert; and (d) conceding guilt in closing argument.

To establish ineffective assistance of counsel, a state prisoner must demonstrate that: (1) counsel's performance was deficient, meaning that counsel's errors were so serious that he failed to function as counsel guaranteed by the Sixth Amendment; and (2) that the deficiency prejudiced the defense in that the errors deprived defendant of a fair trial, meaning one whose result is reliable. *Strickland*, 466 U.S. at 687.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a habeas petitioner must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

For claims that have been adjudicated on the merits in state court, a petitioner must show that the adjudication "resulted in a decision that was contrary to or involved an unreasonable application" of *Strickland*. *See* 28 U.S.C. §2254(d)(1); *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The federal court's review must be "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[T]he question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

### 1. Failure to call witnesses and meet with Johnson.

Johnson first alleges that his attorney provided ineffective assistance for failing to subpoena three witnesses or meet with him the weekend before trial. ECF No. 1-2 at 50. Johnson raised this claim in his post-conviction application and writ application to the Louisiana Supreme Court, but he did not present the substance of this claim to the Second Circuit. The claim is unexhausted. 28 U.S.C. §2254(b)(1)(A). It is also procedurally defaulted because Johnson cannot go back and present the claim at this juncture.

Even if the claim was exhausted, Johnson does not make the showing necessary to overcome the deference afforded the state court adjudication. First, Johnson does not satisfy *Strickland*'s prejudice prong. He has not shown a reasonable probability of a different result had trial counsel visited with him the weekend before trial or presented testimony of the three uncalled witnesses. Considering the overwhelming evidence of his guilt as previously discussed, these alleged deficiencies do not undermine confidence in the outcome of the trial. Johnson's claim is conclusory.

Moreover, Johnson has not shown deficient performance. Complaints that trial counsel failed to call witnesses are not favored because "the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative." *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008). To show prejudice, the petitioner must name the witness; demonstrate that the witness was available to testify and would have done so; set out the content of the witness's proposed testimony; and show that the testimony would have been favorable to a particular defense. *See Bray*, 265 F. App'x at 298. (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Johnson asserts that Ronnie Hill ("Hill") would have testified to the "most accurate version of the incident, because Hill was the first person he spoke with afterward and "before the shock set in[.]" ECF No. 1-2 at 51. Johnson notes that Hill

told the detectives what Johnson told him on the phone, so this would corroborate his self-defense claim. *Id.* Johnson claims that Hill was familiar with his and Moore's relationship, and that he would have testified she was "very temperamental" and "prone to violence" when the two argued. *Id.* He further claims that Hill would have testified about Moore's use of alcohol and illegal narcotics and that he had advised Johnson to call the police to deal with Moore.

However, an affidavit signed by Hill merely states that the SPD contacted Hill; he gave an account of the call; and that he was willing to testify on Johnson's behalf. The document does not set forth the content of his proposed testimony as represented by Johnson. ECF No. 1-3 at 248. Moreover, Johnson essentially claims that Hill was simply going to repeat what he had been told by Johnson during their phone call. Hill had no independent knowledge of the incident.

Johnson has not presented proposed testimony by Hill that would have been favorable to the defense or that would have made a difference in the outcome of the trial.

Next, Johnson asserts that his father, Robert George Johnson ("Mr. Johnson"), made unsuccessful attempts to speak with trial counsel about his son's charge. An affidavit signed by Mr. Johnson states that Johnson's relationship with Moore was "toxic and troublesome" and that he intervened in their altercations numerous times. It states that Mr. Johnson wanted to testify "to the personal experience [he] witnessed with Yolanda and Raymond concerning their relationship." See Doc. 1-3, p. 250.

Still, Johnson does not establish that his father's testimony would have been favorable to a particular defense at trial or would have made any difference in the outcome of the trial. *See Strickland* 466 U.S. at 694. The affidavit does not refer to a specific incident about which testimony may have been admissible. Johnson's father was not a witness to the murder. Moreover, affidavits provided by close relatives are "inherently suspect." *See Cole v. Vannoy*, 2020 WL 520614, at *11 (E.D. La. 2020) (citing *Milton v. Secretary, Department of Corrections*, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's affidavits suspect because they were executed by relatives).

Johnson also claims that Allie Allen ("Allen") would have testified on his behalf. He provides an affidavit from Allen stating that she was in a relationship with Johnson from 2013 to 2015; they shared a home together; and Johnson was never abusive. *See* Doc. 1-3, p. 252. Even if Allen was willing and available to testify, it is unlikely and speculative that her evidence of Johnson's character would have made a difference in the verdict, especially given the physical evidence and evidence of his past abusive treatment of both Moore and Randle, the mother of his children. *See State v. Johnson*, 277 So.3d at 1270-74, 1277-79.

Last, the decision not to present testimony of these three witnesses falls within the realm of trial strategy. Even if these witnesses had anything favorable or admissible to offer, cross-examination by the prosecution would have undoubtedly unveiled more unfavorable testimony about Johnson.

Because Johnson cannot show deficient performance or the prejudice required to prevail under *Strickland*, his claim should be denied and dismissed.

        2.    <u>Failure to investigate or present the victim's past aggressive behavior</u>.

Johnson alleges that counsel provided ineffective assistance by failing to investigate or present evidence of prior incidents in which he claims Moore was the aggressor. This claim was not properly exhausted because Johnson failed to raise it in the Second Circuit. ECF No. 14-12. In that writ application, he argued counsel's alleged failure to investigate, but he did not reference *Strickland* or a federal constitutional right. Johnson did not present the substance of this federal habeas claim to each state court in a procedurally proper manner as is required to exhaust state remedies under § 2254(b)(1)(a).

Even if the claim was exhausted, it is meritless because Johnson has failed to "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Information regarding all prior domestic reports between Johnson and Moore was provided by the State in supplemental discovery. ECF No. 3 at 107-08. There were nine reports of domestic violence where Johnson was the alleged aggressor and Dana Randle was the alleged victim; nine reports where Johnson was the alleged aggressor and Moore was the alleged victim; and a few where Johnson was the alleged victim—mainly of phone calls or threats. *Id.* Whether to present evidence of the few prior incidents where Johnson claimed to be a victim was within the realm of trial strategy and counsel's discretion.

26

Moreover, Johnson exercised his right to not testify at trial.  ECF No. 14-9 at 14-15.  Had he testified in support of his "self-defense" theory, he would have been subject to cross-examination about the alleged abuse of Moore and Randle, his actions the night of Moore's murder, and the different claims he made during the investigation.  None of this would have aided his defense.  Johnson does not show that counsel rendered deficient performance by not investigating or presenting evidence of prior incidents, nor does he show that such evidence would have made any difference in the outcome of trial.  His claim that the jury "would have concluded that this was another incident where Ms. Moore had attacked" him is conclusory and inadequate to satisfy *Strickland*'s prejudice prong.  The claim should be denied.

### 3.    Expert Witness

Johnson complains that trial counsel failed to consult or hire an expert witness to support his claim that Moore was in an intoxicated and drug-induced state that made her "unpredictable and dangerous" when she supposedly attacked him.  ECF No. 1-2.  Johnson argues that defense counsel should have petitioned the court for funds to hire an expert to understand the scientific and technical information presented by the state and to challenge the testimony of the state's experts and impeach their testimony.

Like the other ineffective assistance claims, this claim is unexhausted and procedurally defaulted because the same federal constitutional claim was not included in his writ application before the Second Circuit.  ECF No. 14-13.

Regardless, claims alleging ineffective assistance of counsel based on the failure to call an expert witness are assessed under *Strickland* like claims regarding uncalled lay witness discussed above. *See Day*, 566 F.3d at 538. Johnson does not show that an expert was available for trial and willing to testify on his behalf. He does not set forth the content of the expert's proposed testimony or establish that such testimony would have been favorable to the defense. Johnson offers only speculation about what a hypothetical expert witness would have testified to regarding the effect of alcohol and/or marijuana on Moore.

Additionally, there is nothing to support Johnson's claim that expert testimony about the effects of alcohol or marijuana on Moore would have made any difference in the outcome of this trial. Dr. Traylor, who performed Moore's autopsy, testified regarding the toxicology results and the blood alcohol level and drugs detected. ECF No. 14-8 at 73-74. Cross-examination by defense counsel established that Moore had been drinking and had smoked marijuana within an hour of her death. *Id.* at 83-86. Therefore, the jury already had information that Moore was likely intoxicated and had smoked marijuana prior to her death. Nonetheless, that information, considered with the other evidence and testimony, still led to a guilty verdict.

Johnson also claims that, under *Ake v. Oklahoma*, 470 U.S. 68 (1985), defense counsel should have petitioned the court for funds to hire an expert to understand "the scientific and technical information presented by the State" and to challenge the testimony of the State's experts and impeach their testimony. ECF No. 1-3. However, *Ake* is inapplicable. In *Ake*, the defendant's sanity at the time of the capital offense

was a significant issue at trial.  The Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a state provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake*, 470 U.S. at 74.  Johnson's sanity was not at issue, and there was no need for an *Ake* expert for the defense.

Moreover, Johnson's claims about his need for an expert are speculative and based on his conclusory allegation that expert testimony about Moore's intoxication would have led the jury to find he acted in self-defense when he stabbed Moore 21 times.  Johnson does not show that the failure to obtain an expert or request funding for an expert constituted deficient performance, and he does not satisfy the prejudice element required under *Strickland*.

G.    <u>There was no constitutional violation from the lack of an evidentiary hearing.</u>

Johnson complains that the trial court did not conduct an evidentiary hearing on his ineffective assistance of counsel claims.  Such a claim is not cognizable on federal habeas review.

Whether to conduct an evidentiary hearing is a matter of state law governing post-conviction relief proceedings.  *See* La. C. Cr. P. art. 930.  This claim does not warrant consideration on federal habeas review because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  *Rudd v. Johnson*, 256 F. 3d 317, 319 (5th Cir. 2001), *cert. denied*, 534 U.S. 1001 (2001); *Kinsel v. Cain*,

647 F.3d 265, 273 (5th Cir. 2011), *cert. denied*, 565 U.S. 1094 (2011); *Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999).

## III.  Conclusion

Because Johnson cannot meet his burden under § 2254, IT IS RECOMMENDED that the Petition (ECF No. 1) be DENIED AND DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on

whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Monday, January 8, 2024.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE